# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LARRY E. SCHWARTZ, | ) | Case No. 3:20–cv–01097–JJH |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

## I.    Introduction

Larry Schwartz, Plaintiff, seeks judicial review of the final decision of Andrew Saul, the Commissioner of Social Security. The Commissioner denied Schwartz's application for disability insurance benefits under Title II of the Social Security Act. This matter is before me under 42 U.S.C. § 405(g) and Local Rule 72.2(b). Because the ALJ followed proper procedures and his decision is supported by substantial evidence, I recommend that the Commissioner's final decision be AFFIRMED.

## II.    Procedural History

Schwartz applied for disability insurance benefits on January 8, 2015. (ECF No. 13, PageID #: 90). He alleged a period of disability beginning on April 18, 2014. (ECF No. 13, PageID #: 90). Schwartz's claim wound its way through the administrative process, first with the Ohio Division of Disability Determination (the "State Agency"), who denied his claim on initial consideration and again on reconsideration, and then before ALJ Ann Paschall, who issued an unfavorable decision on August 2, 2017. (ECF No. 13, PageID #: 90). Schwartz asked the Appeals Council to review and set aside the ALJ's ruling; it did so, remanding the claim to the ALJ to "give further

1

consideration to [Schwartz]'s maximum residual functional capacity, evaluate the opinion of [Schwartz]'s primary care provider(s) [and,] in doing so, offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision…" (ECF No. 13, PageID #: 90).

After the Appeals Council's remand, ALJ Glen Watkins presided over Schwartz's second hearing, which was held on October 15, 2018, in Tampa, Florida. (ECF No. 13, PageID #: 90). Schwartz appeared through counsel Mia Mancinelli Cloud and testified. (ECF No. 13, PageID #: 128–36). Malisha McPhaul testified as an impartial vocational expert. (ECF No. 13, PageID #: 136–42). The ALJ issued his decision on December 7, 2018, finding that Schwartz was not disabled under the Social Security Act. (ECF No. 19, PageID #: 90–98). Thereafter, Schwartz again asked the Appeals Council to review and set aside the ALJ's decision. This time, on March 16, 2020, the Appeals Council denied Schwartz's request. (ECF No. 13, PageID #: 65–68). This timely appeal followed. (ECF No. 1). Schwartz filed his merits brief on October 26, 2020. (ECF No. 14). The Commissioner responded on December 30, 2020. (ECF No. 17). Schwartz replied on January 13, 2021. (ECF No. 18).

## III.    Relevant Background

Because Schwartz does not allege that the ALJ impermissibly parsed the record, the ALJ's narratives of the relevant hearing testimony, medical evidence, and opinion evidence provide sufficient background for this Report and Recommendation.

### A.    Schwartz's Supporting Documents and Hearing Testimony

Through supporting documents and hearing testimony, the claimant has alleged disability due to issues involving his lower back. The claimant has alleged chronic pain, difficulty bending, lifting, twisting, walking long distances, and driving long distances. The claimant has alleged worsening of his condition and pain with almost all activities. The claimant has also alleged medication side

2

effects including bleeding and an allergic reaction (Exhibits 2E, 4E, 7E, 9E, 11E, 14E, 15E, Hearing Testimony).

(ECF No. 13, PageID #: 95).

### 1. Vocational Expert Testimony

The vocational expert testified that given all of these factors, the individual would have been able to perform the requirements of representative occupations such as routing clerk (Dictionary of Occupational Titles (DOT) No. 222.687-022, light, unskilled) with approximately 63,000 jobs in the national economy; marker (DOT No. 209.587-034, light, unskilled) with approximately 330,000 jobs in the national economy; and checker 1 (DOT No. 222.687-010, light, unskilled) with approximately 34,000 jobs in the national economy.

(ECF No. 13, PageID #: 97).

### B. Medical Evidence

The claimant is an individual with a history of neck, shoulder, and back pain, with associated leg numbness, treated by a chiropractor (Exhibit 1F). Shortly after the claimant's application was filed, a consultative examination was conducted to help more fully evaluate the claimant's physical condition. Roger Arumugam, M.D.[,] examined the claimant and noted his ability to walk and mount onto the examination table without assistance, ability to heel and toe walk, normal range of motion, and 5/5 motor strength in all extremities. The claimant had a positive straight leg raising test in the sitting position at 90 degrees, and at 75 degrees in the supine position. Dr. Arumugam listed diagnoses of hypertension, obesity, and lumbago, and concluded there was no evidence of any functional impairment (Exhibit 3F). Later in 2015, a magnetic resonance imaging (MRI) scan of the claimant's lumbar spine was obtained and revealed mildly diffusely bulging discs with disc desiccation and endplate degenerative changes at L4-5 and L5-Sl, a broad-based central disc protrusion with posterior annular fissuring at L4-5 that was effacing the L5 nerve root with mild central canal stenosis, and a disc bulge asymmetric to the right with posterior osseous ridging at L5-Sl with mild right foraminal narrowing and superimposed moderate facet hypertrophy (Exhibit 5F).

The claimant received some chiropractic treatment in 2016 (Exhibit 6F) and then established with Scott Kautz, ARNP[,] of Central Florida Health Care for primary care services. The nurse practitioner

noted some tenderness to palpation on the claimant's lower back muscles, but normal ambulation, full range of motion, normal motor strength, normal movement of all extremities, and normal gait and station. Assessments included elevated blood pressure, obesity, and chronic low back pain. Routine laboratory screening confirmed elevated liver enzymes and the claimant had some +1 edema during subsequent visits. However, the claimant was still noted to have a normal gait (Exhibit 7F). The claimant was referred to orthopedist Robert Massam, M.D.[,] in December of 2016. Dr. Massam indicated that the claimant presented with a form from his attorney, but informed the claimant that a Functional Capacity Evaluation would have to be conducted for him to complete it. Upon examination, the claimant had a positive straight leg raising test at 90 degrees in the sitting position and tenderness in the right sacroiliac joint and trigger points therein. The claimant also had reported pain down his right leg, but had normal extremities (Exhibit 9F).

The claimant returned to Central Florida Health Care to see Mr. Kautz in January of 2017. Upon examination, the claimant was obese with +1 edema again, but had a normal gait, normal movement of all extremities, normal tone, and normal strength. Mr. Kautz completed a questionnaire concerning the claimant's work-related limitations on the same day of the claimant's appointment. Kimber Vasquez, M.D., a physician who appears to work with Mr. Kautz at Central Florida Health Care also signed the form. The providers indicated the claimant could lift and carry no more than 10 pounds, could sit, stand, and walk each less than 2 hours total in an 8-hour day, and that he takes frequent naps. The questionnaire also notes limitations in twisting, crouching, climbing ladders, stooping/bending, climbing stairs, reaching, pushing, pulling, handling, feeling, and being in certain environments. More than four absences from work per month was also noted on the questionnaire (Exhibits 8F, 10F).

There is no evidence of the claimant receiving any treatment in 2017 after that January visit with Mr. Kautz. In April of 2018, the claimant established care at the Gene Wright Community Health Center. At that time, the claimant had some tenderness to palpation at the spine and moderately restricted range of motion of the left upper extremity. A left rotator cuff tear was suspected and x-rays of the claimant's lumbar spine were obtained and confirmed degenerative disc disease and facet arthropathy, most conspicuous in the lower lumbar spine (Exhibits 10F, 11F, 13F, 14F). The claimant's date last insured was June 30, 2018, but the undersigned notes the August 2018 MRI scans of his cervical and lumbar spine. The claimant's

cervical spine had multilevel shallow disc bulges, and mild to moderate neural foraminal narrowing at C3-4 and C4-5, mild endplate spondylosis at C4-5 and C5-6. The claimant's lumbar spine had a disc bulge with left paracentral caudal disc extrusion and mild central canal narrowing at L5-Sl, left lateral recess impingement of the descending left S1 nerve root at L5-S1, mild bilateral neural foraminal narrowing without impingement at L5-S1, disc bulging with mild central canal narrowing at L4-5, and mild osseous degenerative changes (Exhibits 11F, 14F). The claimant has been receiving treatment through Monica Loke, M.D.[,] and Athletico Physical Therapy since August (Exhibits 11F, 14F, 15F).

(ECF No. 13, PageID #: 93–95).

### C.      Opinion Evidence

The record contains opinions from the State Agency consultants[1] and Kautz and Vasquez. Schwartz objects only to the ALJ's analysis of Kautz and Vasquez's opinion. (*See* ECF No. 14, PageID #: 765–69). Because Schwartz discusses the *Deskin* rule (discussed below), the Court provides a brief overview of these other opinions.

### 1.      Opinions of the State Agency Consultants

On the State Agency's initial review in February 2015, Aileen Santos, SDM (single decision maker), reviewed Schwartz's claim of disability stemming from a lower-back injury. (ECF No. 13, PageID #: 240–42). She noted that at a February 16, 2015 medical exam Schwartz was able to walk into the doctor's office without an assistive device and get on the examination table "without any assistance," despite alleging "ba[ck] pain radiating to [the] legs and [that his] back gives out." (ECF No. 13, PageID #: 240). Santos also noted that Schwartz could heel-toe walk; his bounce test was negative; his joint reflexes were within normal limits; his gait was within

---

[1] The ALJ also discusses an opinion from Roger Arumugam, M.D., who examined Schwartz for the State Agency on February 15, 2015. (ECF No. 13, PageID #: 94–96). The State Agency medical consultants discussed below summarized Arumugam's opinion and relied on it directly in making their determinations. (ECF No. 13, PageID #: 240–41, 259–51). Schwartz does not object to the ALJ's discussion or analysis of Arumugam's findings.

normal limits; he had symmetrical bilateral muscle definition without wastage; and his motor strength was 5/5 in all extremities. (ECF No. 13, PageID #: 240–41). From this evidence, Santos concluded that Schwartz had no severe impairments, *i.e.*, that his claim failed at Step Two of the sequential evaluation process. (ECF No. 13, PageID #: 241). She also opined that he showed no functional limitations. (ECF No. 13, PageID #: 241).

Efren Baltazar, M.D., reviewed Schwartz's claim at reconsideration in May 2015. (ECF No. 13, PageID #: 249–51). He, too, opined that Schwartz's claim demonstrated no severe impairments, and he did so for the same reasons as Santos. (ECF No. 13, PageID #: 249–51).

The ALJ summarized these opinions, saying that

> After reviewing [Schwartz's] file, Dr. Baltazar opined [that Schwartz] had no severe impairment at all (Exhibit 4A). While Dr. Baltazar is a licensed physician familiar with the evidentiary requirements of the Social Security regulations, the claimant's file did not yet contain imaging of his spine or the subsequent treatment records from Central Florida Health Care and Gene Wright Community Health Center.

(ECF No. 13, PageID #: 95).

### 2. Opinion of Kautz and Vasquez

> Mr. Kautz, the claimant's nurse practitioner and primary care provider, appears to have completed the questionnaire at Exhibits 8F and 10F, and Dr. Vasquez appears to have concurred with the limitations and signed it. Limitations noted on the questionnaire included lifting and carrying no more than 10 pounds, sitting, standing, and walking each less than even 2 hours in an 8-hour day, lying down at unpredictable intervals, and limitations in postural functions, manipulative functions, pushing, pulling, and being in certain environments. Greater than four absences from work per month was additionally noted…

(ECF No. 13, PageID #: 96).

## IV. The ALJ's Decision

As is relevant here, the ALJ issued the following findings of fact and narrative analysis:

6

3.      Through the date last insured, the claimant had the following severe impairments: hypertension; obesity; cervical and lumbar spine disc desiccation, bulging, and degeneration; left shoulder rotator cuff tear/adhesive capsulitis…

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…

5.      Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he could no more than occasionally perform postural activities, including climbing ladders, ropes, scaffolds, ramps, and stairs, balancing, stooping, crouching, kneeling, and crawling. The claimant remained able to reach overhead no more than occasionally…

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

The claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms are found to be only partially supported due to inconsistencies between them and the other evidence of record. For example, the claimant reported medication side effects within Exhibit 11E, but his treatment records make no mention of any significant issues related to side effects. The claimant has alleged pain and difficulty with almost every activity including sitting, standing, and walking, but examination findings within his treatment records and Dr. Arumugam's report support the finding that he is capable of a restricted range of light work activity. Findings have included edema and restricted range of motion, but normal gait and normal strength (Exhibits 3F, 7F, 10F, 12F, 13F). Some of the claimant's allegations are consistent with the other evidence of record and his residual functional capacity was adjusted accordingly.

In determining the claimant's residual functional capacity, the undersigned accorded little weight to the opinion of Disability Determination Services (DDS) consultant Efren Baltazar, M.D. After reviewing the claimant's file, Dr. Baltazar opined [that] the claimant had no severe impairment at all (Exhibit 4A). While Dr.

7

Baltazar is a licensed physician familiar with the evidentiary requirements of the Social Security regulations, the claimant's file did not yet contain imaging of his spine or the subsequent treatment records from Central Florida Health Care and Gene Wright Community Health Center. The undersigned finds the claimant to be more limited than Dr. Baltazar opined, given these records and some of the claimant's subjective reports. Consultative examiner Dr. Arumugam similarly opined the claimant had no functional impairment after examining him (Exhibit 3F), but this too was accorded little weight since imaging of the claimant's spine and his subsequent treatment records later document some abnormal findings upon examination.

In determining the claimant's residual functional capacity, the undersigned accorded little weight to the opinion of Mr. Kautz and Dr. Vasquez as well. … While the undersigned finds the claimant to be significantly limited in the ability to perform basic physical work activities, the limitations in this questionnaire are inconsistent with Mr. Kautz's own treatment notes. The claimant began receiving treatment at Central Florida Health Care in September of 2016, at which time he was noted as reporting pain, but having a normal gait and station, ambulating normally, having full range of motion of the neck, having normal motor strength, and displaying normal movement of all extremities. Just some tenderness to palpation to the claimant's lower back muscles was noted. Subsequent progress notes contain similar findings (Exhibit 7F). On the day Mr. Kautz completed the questionnaire, his notes reflect some edema but again a normal gait, normal movement of all extremities, and normal strength (Exhibit 12F).

After careful consideration of the opinions discussed above, the claimant's treatment records and subjective reports, the imaging of his spine, and Dr. Arumugam's report, the undersigned finds him to be significantly limited in the ability to perform basic physical work activities. The claimant's hypertension, obesity, cervical and lumbar spine conditions, and left shoulder condition and resulting pain, weakness, and related symptoms restricted him to no more than light work activity. The claimant could no more than occasionally perform postural activities due to his obesity and chronic pain. The claimant's left shoulder pain and findings of restricted motion along with his cervical spine issues further limited him to no more than occasional overhead reaching. In sum, the above residual functional capacity assessment is supported by the objective physical examination findings contained in the record, the imaging of his cervical and lumbar spine, and in part by his subjective reports.

6.      Through the date last insured, the claimant was unable to perform any past relevant work…

The claimant has past relevant work as a police officer, guard security person, and tractor trailer truck driver, all of which require exertional capabilities above the light level (Exhibits 2E, 3E, 13E, Hearing Testimony). The vocational expert also confirmed at the hearing that an individual with the claimant's residual functional capacity would be unable to perform these jobs…

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed…

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the undersigned asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity…

Pursuant to Social Security Ruling 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT. Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule.

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from July 28, 2014, the alleged onset date, through June 30, 2018, the date last insured…

(ECF No. 13, PageID #: 93–98).

9

## V.       Law and Analysis

### A.       Standard of Review

The Court's review is limited to determining whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. 42 U.S.C. § 405(g); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is "more than a scintilla" of relevant evidence; a reasonable person "might accept [it] as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "It is well established that the party seeking remand bears the burden of showing that a remand is proper…" *Oliver v. Sec'y of Health and Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Under this standard of review, a court cannot decide the facts anew, make credibility determinations, or re-weigh the evidence; if the Commissioner's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference…"). The decisive question is whether the ALJ's conclusions are "substantially supported in the record." *Rogers*, 486 F.3d at 241. If so, then the court must affirm the Commissioner's findings, even if the court does not agree with the Commissioner's decision, or substantial evidence exists to support an alternative result. *Elam*, 348 F.3d at 125 ("The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without the court second guessing him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."). Thus,

the movant bears the burden of demonstrating that the ALJ's analysis *lacks* substantial evidence, not merely that substantial evidence supports her position, too. *See Greene ex rel. Greene v. Astrue*, No. 1:10–cv–414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that would allow a reasonable mind to accept the ALJ's conclusion.").

Despite this deference, a court will not uphold the Commissioner's decision if the ALJ failed to apply proper legal standards, *i.e.*, "fails to follow its own regulations," unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Legal error is not harmless if the "error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* And the court will not remand a case for further administrative proceedings absent prejudice on the merits or a deprivation of substantial procedural rights. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Similarly, if the ALJ failed to "build an accurate and logical bridge between the evidence and the result," then the court cannot uphold the ALJ's decision, even one supported by substantial evidence. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)). This and other 6th Circuit District Courts follow *Sarchet*'s logical-bridge requirement[2] because it ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance

---

[2] *E.g. Shrader v. Astrue*, No. 11–13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012); *McHugh v. Astrue*, No. 1:10–CV–734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10–CV–017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09–CV–19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. The ALJ Properly Considered Kautz and Vasquez's Opinion and Properly Narrated His Reasons for According It Little Weight

Schwartz broadly argues that "the ALJ's decision should be reversed because the ALJ failed to properly articulate good reasons for accounting less than controlling weight to Dr. Vasquez's opinions." (ECF No. 14, PageID #: 765). Despite that narrow issue statement, Schwartz's brief actually raises three discrete issues. First, Schwartz implicitly argues that Vasquez authored an opinion that was entitled to controlling weight. (*See* ECF No. 14, PageID #: 765 ("The ALJ's decision should be reversed because the ALJ failed to properly articulate good reasons for according less than controlling weight to Dr. Vasquez's opinions.")). Second, Schwartz directly argues that the ALJ's reason for discounting Vasquez's opinion—that it was inconsistent with other treatment notes and lacking in support—goes against the record as a whole. (ECF No. 14, PageID #: 767). Third, Schwartz argues that, under *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008), the ALJ should have sought additional medical opinion evidence before ultimately deciding Schwartz's claim. (ECF No. 14, PageID #: 768).

The Court addresses each sub-issue below.

1.    **The ALJ Was Not Obligated to Accord Controlling Weight to Kautz and Vasquez's Opinion Because Neither Is a Treating Source**

Schwartz initially argues that the ALJ "improperly discounted" treating-source opinions. (*See* ECF No. 14, PageID #: 765 (arguing that the ALJ failed to accord "controlling weight to Dr. Vasquez's opinions")). Schwartz does not explain why Vasquez is a treating source, nor does he point to the ALJ treating Vasquez as one. Instead, Schwartz merely discusses the manner in which an ALJ must evaluate a treating source's opinion and the "good reasons" standard for according to a treating source's opinion less than controlling weight. (ECF No. 14, PageID #: 766).

The Commissioner, on the other hand, argues that Vasquez is not a treating source as defined by regulations. The Commissioner points out that [t]here is no treatment or examination record with Dr. Vasquez's name on it." (ECF No. 17, PageID #: 779). And the Commissioner argues that only Kautz served as Schwartz's primary care provider. (ECF No. 17, PageID #: 779 (citing ECF No. 13, PageID #: 628, 633, 645, 680)). The Commissioner also argues that Kautz is not a treating source, either, because nurse practitioners, like Kautz, are "'not … acceptable medical source[s].'" (ECF No. 17, PageID #: 779 (quoting *Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016))).

Under the treating source rule, an ALJ "must" give a treating source's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (eff. to July 31, 2006))). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic

techniques or if it is inconsistent the with other substantial evidence in the case record." Soc. Sec. Ruling 96–2p, 1996 WL 374188, at *2 (July 2, 1996).

"Treating source" is a term of art, and it is defined as "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2).[3] The Commissioner will "[g]enerally … consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." 20 C.F.R. § 404.1527(a)(2). Although a claimant and his treating source usually have an established, long-term treatment relationship, the Commissioner "may consider" someone who has "treated or evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)." 20 C.F.R. § 404.1527(a)(2).

As an initial point, the Court agrees with the Commissioner that Kautz is not a treating source under 20 C.F.R. § 404.1527 because Kautz is a licensed advanced practice nurse practitioner. Under 20 C.F.R. § 404.1502(a), only licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are defined as "acceptable medical sources" for claims filed before March 27, 2017.[4] Because advanced practice nurse practitioners, like Kautz, are not acceptable medical sources, the ALJ was not

---

[3] 20 C.F.R. § 404.1527 was repealed on March 27, 2017, and does not apply to cases filed on or after that date. 82 Fed. Reg. 15,132 (Mar. 27, 2017). Because Schwartz applied for disability insurance benefits on January 8, 2015, the regulation controls applies to the ALJ's analysis of this case.

[4] Licensed advanced practice registered nurses (APRNs) are considered acceptable medical sources only for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1502(a)(7).

14

required to give good reasons for discounting his opinion.

Similarly, the Court concludes that Vasquez is not a treating source because there is no evidence of a treating-source relationship between Schwartz and Vasquez. In his brief, Schwartz states that he "received treatment at Central Florida Health Care with Mr. Scott Kautz, ARNP, and Dr. Kimber Vasquez." (ECF No. 14, PageID #: 762 (citing ECF No. 13, PageID #: 635)). But the page that Schwartz cites does not show Vasquez as a care provider—only Kautz. (ECF No. 13, PageID #: 635). Schwartz's only other assertion that Vasquez was a treating source is stating that "Mr. Kautz and Dr. Vasquez completed a medical source statement dated January 11, 2017. (ECF No. 14, PageID #: 765 (citing the opinion at issue at ECF No. 13, PageID No. 643–44)). The ALJ correctly noted that "Vasquez … [is] a physician who appears to work with Mr. Kautz at Central Florida Health Care" and that "Mr. Kautz … appears to have completed the questionnaire at Exhibits 8F and 10F, and Dr. Vasquez appears to have concurred with the limitations and signed it." (ECF No. 13, PageID #: 94, 96). But the ALJ never implied or indicated that he assessed Vasquez as a treating source. And rightfully so: Nothing in the record indicates that Schwartz developed with Vasquez a treatment relationship of the nature discussed at 20 C.F.R. § 404.1527(a)(2). *See Barker v. Shalala*, 40 F. 3d 789, 794 (6th Cir. 1994) (noting that a single consultative visit does not establish a treatment relationship).

The Court concludes that the opinion from Kautz and Vasquez was not an opinion from a treating source, but only an opinion from medical sources who are not *acceptable* medical sources under 20 C.F.R. § 404.1527(f). Accordingly, the ALJ was not required to give good reasons for giving the opinion little weight.[5] 20 C.F.R. § 404.1527(c).

---

[5] In any case, it appears from his reply brief that Schwartz has largely abandoned the treating-source argument. (*See* ECF No. 18, PageID #: 789–90 (stating "[r]egardless of Dr.

## 2. The ALJ Properly Accorded Little Weight to Kautz and Vasquez's Opinion

The crux of Schwartz's argument, though, is that the ALJ improperly discounted Kautz and Vasquez's opinion as inconsistent with the record when "[t]he record as a whole documents support for these … opinions." (ECF No. 14, PageID #: 766). Schwartz argues that "[t]he treatment notes [in the record] document regular and ongoing treatment for significant physical issues." (ECF No. 14, PageID #: 767). Schwartz then restates various parts of the medical record that he believes support Kautz and Vasquez's opinion. (*See* ECF No. 14, PageID #: 766–67). Finally, Schwartz argues that "[t]he ALJ's cursory declarations of inconsistency and a lack of support do not comport with the record as a whole." (ECF No. 14, PageID #: 767).

In response, the Commissioner argues that the ALJ properly concluded and narrated his finding that Kautz and Vasquez's opinion was inconsistent with the record evidence. (ECF No. 17, PageID #: 781–82). The Commissioner points out that the ALJ is "only required to generally explain the weight given to non-examining physicians and non-acceptable medical sources," which the Commissioner argues the ALJ did. (ECF No. 17, PageID #: 780 (citing *Smith v. Colvin*, No. 3:13–CV–00776, 2013 WL 6504681, *11 (N.D. Ohio Dec. 11, 2013))). And the Commissioner notes that even if Vasquez were a treating source, "[i]nconsistency is a good reason to discount a treating source's opinion." (ECF No. 17, PageID #: 781). Finally, the Commissioner argues that Schwartz's attempt to support *post hoc* Kautz and Vasquez's opinion with evidence in the record fails because "[a] doctor's opinion is unsupported unless the doctor provides support in the opinion." (ECF No. 17, PageID #: 782 (citing 20 C.F.R. § 404.1527(d)(3) for the proposition that "[t]he more a medical source presents relevant evidence to support an opinion, particularly

Vasquez's status as a treating physician or not…" and "regardless of whether Dr. Vasquez was a treating physician…")).

medical signs and laboratory findings, the more weight we will give that opinion")).

Kautz and Vasquez's opinion is one from a "health care provider[] who [is] not [an] acceptable medical source[]." (Soc. Sec. Ruling 06–03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006) (*rescinded by* Recision of Social Security Rulings 96–2p, 96–5p, and 06–03p, 2017 WL 3928298 (S.S.A. Mar. 27, 2017).[6] In considering such opinions, an ALJ may consider the six factors at 20 C.F.R. § 404.1527(c): (1) the length and frequency of the relationship; (2) the opinion's consistency with other admitted evidence; (3) the opinion's supporting evidence; (4) the opinion's explanation; (5) the provider's specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion. 20 C.F.R. § 404.1527(c); SSR 06–03p. But the ALJ does not need to do so in a rigid manner, as the "factors represent [only] basic principles that apply to the consideration of all opinions from medical sources who are not acceptable medical sources." SSR 06–03p. The ALJ has to consider only the factors that are relevant to the facts in the case; if he "adjudicate[s] [the claim] on its own merits based on a consideration of the probative value of the opinions" and substantial evidence supports the weight he accorded to the at-issue evidence, then the ALJ's weight determination will stand. SSR 06–03p.

An ALJ's narrative concerning the weight accorded to opinion evidence can be sufficient even though it is "brief" (*Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)), "indirect[]" (*Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 471 (6th Cir. 2006)), or implied. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) ("[I]t is well settled that …an ALJ can consider all the evidence without directly addressing in his written decision

---

[6] SSR 96–2p was prospectively rescinded on March 27, 2017, so it, too, applies to Schwartz's case.

every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."). If the ALJ narrates the conflicting medical evidence elsewhere in the record, then the ALJ is not required to restate it when explaining how a treating source's opinion is inconsistent with that evidence. *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016).

The ALJ summarized the various opinions that Kautz and Vasquez's provided in their medical source statement like so:

> Limitations noted on the questionnaire included lifting and carrying no more than 10 pounds[;] sitting, standing, and walking each less than even 2 hours in an 8-hour day[;] lying down at unpredictable intervals[;] and limitations in postural functions, manipulative functions, pushing, pulling, and being in certain environments.[7]

(ECF No. 13, PageID #: 96). Schwartz does not object to that summary. The ALJ then contrasted Kautz and Vasquez's limiting opinion against treatment notes in the record that described Schwartz as "having a normal gait and station, ambulating normally, having full range of motion of the neck, having normal motor strength, and displaying normal movement of all extremities" despite some pain and muscle tenderness. (ECF No. 13, PageID #: 96). And the ALJ pointed on that, "[o]n the day Mr. Kautz completed the questionnaire, his notes reflect some edema but again a normal gait, normal movement of all extremities, and normal strength (Exhibit 12F)." (ECF No. 13, PageID #: 96). Schwartz does not dispute this evidence, either. The ALJ reasonably concluded that the above-mentioned treatment notes, especially from Kautz, were "inconsistent with being unable to sit, stand, or walk for even 2 hours in an 8-hour day, having to frequently lie down, and being unable

---

[7] Kautz and Vasquez also opined that Schwartz might be absent from work more than four times per month, which the ALJ noted. (ECF No. 13, PageID #: 96). But Schwartz has not made that particular opinion an issue in this case; thus, the Court does not directly discuss it.

to maintain attendance at work." (ECF No. 13, PageID #: 96). The ALJ then considered the opinion against later evidence, noting that

> [t]he claimant established with a new primary care provider in April of 2018, but even then, examination findings are inconsistent with the serious limitations noted in the questionnaire Mr. Kautz completed. The claimant had tenderness to palpation at his spine and some restricted left upper extremity motion, but nothing to suggest he had any difficulty ambulating, for example (Exhibits 10F, 13F).

(ECF No. 13, PageID #: 96).

The Court concludes that the ALJ's analysis of Kautz and Vasquez's opinion is supported by substantial evidence. As the ALJ noted, Kautz and Vasquez opined that Schwartz could do far less than the other objective medical evidence in the record demonstrated. (ECF No. 13, PageID #: 96). Thus, it was inconsistent with the record—including Kautz's own treatment notes. That finding is supported by substantial evidence because a reasonable person might accept the evidence that the ALJ explicitly discusses as adequate to support that finding. *Rogers*, 486 F.3d at 241. Thus, it should not be disturbed. *Id.* Additionally the ALJ's finding was logically drawn from the record, and the ALJ was within his zone of choice in reaching that conclusion. *Mullen*, 800 F.2d at 545; *Elam*, 348 F.3d at 125. Finally, the ALJ's narrative, which focuses on the consistency and supportability of Kautz and Vasquez's opinion, satisfies the factors set forth in 20 C.F.R. § 404.1527(c) and discussed in SSR 06–03p.

Schwartz is correct, of course, that there is other evidence in the record that could support a different conclusion. (*See* ECF No. 14, PageID #: 766–67 (discussing such evidence)). Nevertheless, a claimant must do more on substantial evidence review than merely point to competing substantial evidence. *See Greene ex rel. Greene*, 2010 WL 5021033, at *4 ("[A] claimant does not establish a lack of substantial evidence by pointing to evidence … that supports her position. Rather, [a claimant] must demonstrate that there is not sufficient evidence … that

would allow a reasonable mind to accept the ALJ's conclusion."). Schwartz has not demonstrated

that the ALJ's finding lacks substantial evidence. Accordingly, the Court concludes that the ALJ

did not err by according little weight to Kautz and Vasquez's opinion.

### 3. *Deskin* Does Not Compel Remand Because the ALJ Did Not Fail to Fully Develop the Record

As a final point, Schwartz argues that the ALJ erred in this case by failing to follow the

*Deskin* rule. (ECF No. 14, PageID #: 768). *Deskin* and its progeny concern the ALJ's duty to

develop the record when the claimant has a severe impairment but the record lacks opinion

evidence about how that impairment might affect the claimant's residual functional capacity to

work. *Deskin*'s facts (which bear repeating here) have been well summarized in other decisions:

> In *Deskin*, the ALJ found the claimant suffered from the severe impairments of degenerative disc disease and fibromyalgia. *Deskin*, 605 F.Supp.2d at 909. None of Deskin's treating physicians provided a medical opinion, despite an extensive treatment history. *Id.* at 910. Rather, the sole medical opinion in the record was that prepared by a state agency reviewing physician. *Id.* The record before the ALJ, however, contained two years of medical records post-dating the state agency physician's opinion. *Id.* The ALJ did not order a consultative examination or have a medical expert testify at the hearing and, instead, 'proceeded to decide the case on his analysis of the medical records, giving only passing mention to [the state agency physician's] opinion.' *Id.*
>
> The Court determined [that] the RFC was not supported by substantial evidence 'because of the absence from the administrative record of a proper medical opinion as to Deskin's work-related limitations.' *Id.* at 910.

*Adams v. Colvin*, No. 1:14–CV–2097, 2015 WL 4661512, *13–14 (N.D. Ohio Aug. 5, 2015). The

lack of opinion evidence in the *Deskin* record led the presiding judge to affirmatively require the

ALJ to further develop the record in a particular instance:

> [If] the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), [then] to fulfill the

20

> responsibility to develop a complete record, the ALJ must re-contact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows 'relatively little physical impairment' and an ALJ 'can render a commonsense judgment about functional capacity.'

*Deskin*, 605 F. Supp. 2d at 912 (quoting *Manso-Pizarro v. Sec'y of Health and Hum. Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)). The same judge later clarified that the *Deskin* holding "sets out a narrow rule that does not constitute a bright-line test. It potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10–cv–0025, 2011 WL 5024866, *2 (N.D. Ohio Oct. 21, 2011).

*Deskin*'s analysis has been questioned by other judges of this District. For instance, another judge stated that *Deskin* "is not representative of the law established by the legislature[] and interpreted by the Sixth Circuit Court of Appeals." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08–CV–2080, 2010 WL 750222, *2 (N.D. Ohio Mar. 2, 2010); *accord Adams*, 2015 WL 4661512, at *12–13 (quoting *Henderson*); *Leflouria v. Berryhill*, No. 1:17–CV–157, 2018 WL 3105943, *7, n. 3 (N.D. Ohio Jan. 16, 2018); *Van Pelt v. Comm'r of Soc. Sec.*, No. 1:19–CV–2844, 2020 WL 7769729, *10 (N.D. Ohio Dec. 30, 2020). Recently, the District has treated *Deskin* as persuasive but not controlling authority.[8] *E.g. Harper v. Comm'r of Soc. Sec.*, No. 1:20–cv–1304, 2021 WL

---

[8] The Commissioner would go further than these decisions, arguing that *Deskin* is no longer good law because it "rested on regulations that no longer applied when the ALJ decided this case." (*See* ECF No. 17, PageID #: 785–86, n. 3). The Commissioner's argument relies on a set of logical assumptions, and the Commissioner does not cite any decision that supports that conclusion. The Court has not discovered any case support, either. *C.f. Leflouria*, 2018 WL 3105943 at *7, n. 3. (stating that despite the negative treatment that it has received, it appears that *Deskin* "has not been

2383833, *14 (N.D. Ohio May 25, 2021) ("*Deskin* isn't controlling and serves only as persuasive authority."); *see also Falkosky v. Comm'r of Soc. Sec.*, No. 1:19–cv–2632, 2020 WL 5423967, *6 (N.D. Ohio Sept. 10, 2020) ("*Deskin* is not controlling.").

The Court concludes that *Deskin* does not apply to this case. While Schwartz declares that "the ALJ's residual functional capacity is not supported by any medical source opinion… [because t]he ALJ discredited each and every opinion of record" (ECF No. 14, PageID #: 769), that is not the case. The ALJ recognized that Kautz and Vasquez's opinion directly discussed Schwartz's residual functional capacity. (ECF No. 13, PageID #: 95–96). As discussed above, the ALJ reasonably accorded little weight to that opinion after a thorough analysis; he did not completely *discredit* it. (ECF No. 13, PageID #: 95–96). That distinguishes Schwartz's case from *Deskin*, where the ALJ gave "only passing mention" to the only opinion evidence in the record and "ignor[ed]" that doctor's findings as to other functional limitations. *Deskin*, 605 F. Supp. 2d at 911–13. Because of the ALJ's cursory review of the opinion evidence in *Deskin*, a subsequent reviewer could only assume that the ALJ had interpreted raw medical data in reaching his finding. *Id.* But by giving Kautz and Vasquez's opinion at least a little weight and fully supporting that finding with commonsense evidence from the record—including Kautz's own treatment notes— the ALJ here created a logical bridge between the RFC finding and the evidence that led him to it. As discussed above, that finding is supported by substantial evidence.

Even though the ALJ properly accorded little weight to the State Agency physicians' early-in-the-process findings that Schwartz had no severe impairments or functional limitations (ECF No. 13, PageID #: 95–96), the ALJ nevertheless considered the record as a whole in analyzing

overruled"). For the reasons discussed below, the Court need not expressly weigh in on the Commissioner's argument because *Deskin* does not control the outcome of this case.

Schwartz's claim and in fashioning the RFC. *Deskin* is not a "bright-line test," under which an ALJ always errs if he fashions a claimant's RFC without direct support from a medical source on the matter. *Kizys*, 2011 WL 5024866 at *2. After all, the ALJ—not a medical doctor—is tasked with fashioning a claimant's RFC. *See Harris v. Comm'r of Soc. Sec.*, No. 1:13–cv–00260, 2014 WL 346287, *11 (N.D. Ohio Jan. 30, 2014) ("The regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC based on all of the relevant medical and other evidence."). And an ALJ can reasonably reject a limitation from an opinion to which he otherwise gives great weight if the particular opinion is inconsistent with or unsupported by the record. *Id.* The "ALJ's duty to develop the record is balanced against the fact that '[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.'" *Justice v. Comm'r of Soc. Sec.*, No. 1:13–cv–00836, 2014 WL 2803469, *11 (N.D. Ohio June 19, 2014) (quoting *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir.1986)); *see also Jackson v. Comm'r of Soc. Sec.*, No. 4:13–CV–929, 2014 WL 2442211, *8 (N.D. Ohio May 30, 2014) ("[I]t is incumbent upon the claimant to provide an adequate record upon which the ALJ can make an informed decision regarding disability."). This record contained sufficient evidence to determine Schwartz's claim. *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 562 (6th Cir. 2014).

At bottom, this is a case in which "the medical evidence shows 'relatively little physical impairment' and an ALJ 'can render a commonsense judgment about functional capacity.'" *Deskin*, 605 F. Supp. 2d at 912. As the Court in *Deskin* noted, the rule that it set forth does not apply to cases like Schwartz's. *Id.* Accordingly, the Court concludes that *Deskin* does not compel a remand here.

## VI.    Recommendation

Because the ALJ followed proper procedures and his decision is supported by substantial

evidence, I recommend that the Commissioner's final decision be AFFIRMED.

DATED: June 30, 2021

*CarmenHenderson*
_____

Carmen E. Henderson
United States Magistrate Judge

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after being served with a copy of this document. Failure to file objections
within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v.
Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).